ALLSTATE INSURANCE COMPANY, Respondent, v FRANK DAILEY, Respondent, and TRAVELERS INDEMNITY COMPANY, Appellant.

Second Department, April 28, 1975

*Samuel F. Simone (Richard Bakalor* of counsel), for appellant.

*King, Edwards & O'Connor (Rocco Conte* of counsel), for Allstate Insurance Company, respondent.

*Longhi & Loscalzo, P.C. (Anthony J. Loscalzo* of counsel), for Frank Dailey, respondent.

HOPKINS, J. Frank Dailey, while operating his wife's automobile, was injured as the result of a collision between that

vehicle and a vehicle operated by Duncan Patterson and owned by National Car Rental System, Inc. The Dailey automobile was insured by Allstate Insurance Company. National's automobile was insured by The Travelers Indemnity Company.[1]

National rented its automobile to Patterson, who used a credit card issued in the name of George Powers and a forged or stolen identification card and license. After the collision National contested its liability as owner on the ground that its automobile had not been driven with its consent or permission at the time of the accident. Dailey then instituted an arbitration proceeding under the uninsured motorists' provision of Allstate's policy. Allstate moved to stay arbitration, contending that the policy's provision was inapplicable, since there existed insurance on National's automobile. Travelers was joined as a party to the proceedings.

The Special Term held that arbitration should be permanently stayed on the ground that National's automobile was being operated by Patterson with consent under the circumstances recited. We affirm. Although Patterson obtained the lease of the automobile from National through fraudulent means, National cannot free itself from its liability as owner under the statutes of New York (Vehicle and Traffic Law, § 388).

The statutes of New York imposing a showing of financial responsibility as a condition to the registration and operation of motor vehicles express a strong public policy that a person injured by the negligence of a driver should have recourse to a defendant able to respond in damages *(Motor Vehicle Acc. Ind. Corp. v Continental Nat. Amer. Group Co.,* 35 NY2d 260, 264; cf. *Cooperman v Ferrentino,* 37 AD2d 474, 478). Thus, renters of automobiles may not enforce restrictions on the use of the automobiles by the lessee and thereby escape liability to a third person on the ground that the violation of the restriction removed the element of consent which the statute (Vehicle and Traffic Law, § 388) requires *(Motor Vehicle Acc. Ind. Corp. v Continental Nat. Amer. Group Co., supra,* p 265).

Travelers (representing National) argues, however, that neither New York's public policy nor the rule in the *Continental* case touches this case. It urges that National would not be

---

1. These facts and the facts following in this opinion appear in a stipulation by the parties.

liable if Patterson had stolen the automobile *(Lotito v Kyriacus,* 272 App Div 635; *General Acc. Group v Noonan,* 66 Misc 2d 528) and that Allstate is obligated to furnish coverage in the event the operator of an automobile insured by it is involved in an accident with a stolen vehicle (Insurance Law, § 167, subd 2-a). The fraud of Patterson in obtaining the automobile from National, the argument continues, is equivalent to a theft in that, in truth, there can be no consent by the owner to operate his automobile if the operator's fraud induces the consent (cf. *Weatherford v Aetna Ins. Co.,* 385 SW2d 381 [Tex]; *Roehrich v Holt Motor Co.,* 201 Minn 586).

Travelers' argument has surface conceptual plausibility. As between the parties to the lease, it may be assumed that National was duped by Patterson, and that it would not have rented its vehicle to him if it had known that he was using another's credit card and a forged license. National dealt with Patterson as if he were Powers, the owner of the credit card. At common law fine distinctions, almost metaphysical in their properties, were drawn between larceny and embezzlement, and between custody, title and possession,[2] so much so that responsibilities of persons under these concepts were confused and ambiguous (cf. *Commonwealth v Rubin,* 165 Mass 453 [HOLMES, J.]; *Commonwealth v Ryan,* 155 Mass 523 [HOLMES, J.]; *Justices v People ex rel. Henderson* 90 NY 12; *People v Van Dusen,* 165 NY 33; *People v Stiller,* 255 App Div 480, affd 280 NY 519). We prefer not to indulge in analysis of such purely conceptual implications, but to follow what we consider to be the broad intent of our public policy and the sweep of the rule in the *Continental* case in determining the effect of the transaction between National and Patterson vis-à-vis Dailey.

Nothing appears in the record to controvert the clear inference that National and Patterson pursued the usual course of negotiation in the trade of renting cars—that Patterson appeared at the renting office and applied for the rental of an automobile, and that National rented an automobile to him. Thus, National delivered possession of the car to Patterson, knowing that Patterson was to operate it during the rental period. National was not deceived as to Patterson's intended use, but rather as to Patterson's identity. National could have,

---

2. The stipulation of facts states that Patterson was arraigned on a charge of conversion of the automobile by reason of fraud, that he failed to appear, and that a warrant for his arrest was issued by the Criminal Court.

of course, checked the validity of Patterson's credit card; whether it did or not does not appear in the record, nor does the record show whether an investigation would have disclosed Patterson's deception. But, as between National and Dailey, National's conduct in renting the automobile to Patterson and permitting him to operate it, albeit under the mistake that Patterson was someone else, subjects it to liability (cf. *Lorippo v Chrysler Leasing Corp.*, 59 Misc 2d 534; *Tuderios v Hertz Drivurself Stations*, 70 Cal App 2d 192).

The case is similar in many respects to those in which an imposter obtains credit by impersonating another. "Where the vendor of personal property intends to sell his goods to the person with whom he deals, then title passes, even though he be deceived as to that person's identity or responsibility" (*Phelps v McQuade*, 220 NY 232, 234; see, also, *Rapee v Beacon Hotel Corp.*, 293 NY 196, 199; 12 Williston, Contracts [3d ed], § 1517). In such an event, an innocent purchaser would acquire good title from the imposter as against the party deceived, even though a thief could not convey good title to an innocent purchaser. In the same sense, and for the reasons reflected by our statute, the innocent third party injured by the negligence of the imposter should be protected by the financial responsibility of the owner who leased the automobile to the imposter.

We recognize that our decision is a choice between two carriers, both of whom engaged in the business of effectuating New York's public policy. But our choice must be based on reasoned principles. Here we think that National's carrier must bear the responsibility for any injury suffered by Dailey, for National put the automobile into the traffic stream, and had at its disposal the opportunity to check the means by which the automobile was leased.

Accordingly, the judgment should be affirmed.

GULOTTA, P. J., MARTUSCELLO and LATHAM, JJ., concur.

Judgment of the Supreme Court, Westchester County, entered June 26, 1974, affirmed, with costs.